**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

DARRELL W. DAYS,

    Petitioner,

v.                                                      CASE NO: 8:07-cv-48-T-30EAJ

SECRETARY, DEPARTMENT OF
CORRECTIONS, et al.,

    Respondent(s).
_____/

**ORDER**

THIS CAUSE comes before the Court upon Petitioner's Amended Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 (Dkt. #14), the Government's Response (Dkt. #23) filed in opposition thereto, and Petitioner's Reply (Dkt. #24).

**BACKGROUND**

On February 23, 2001, Petitioner was placed on probation after entering nolo contendere pleas to various driving and drug related offenses (Dkt.#23). While on probation, Petitioner was charged with aggravated stalking of a child under the age of 16. A jury found Petitioner guilty. Petitioner field a motion for judgment of acquittal which the circuit court denied. Petitioner was sentenced to five years in prison on the stalking charge. Additionally, Petitioner's probation was revoked and he was sentenced to 15 years in prison for violating probation with all sentences running concurrently. Petitioner appealed the trial-based

judgment, arguing that the circuit court erred in denying his motion for judgment of acquittal, and also challenging the revocation of his probation. The Second District Court of Appeal affirmed on February 6, 2004. Thereafter, Petitioner filed a series of collateral motions.

On March 30, 2004, Petitioner filed a motion for post-conviction relief, claiming ineffective assistance of trial counsel. After the motion was denied, Petitioner appealed and the Second District affirmed on December 3, 2004. Petitioner had also filed a motion to correct sentence on August 11, 2004. On October 6, 2004, that motion was denied. Petitioner appealed and the Second Court affirmed on February 2, 2005.[1]

On February 23, 2005, Petitioner filed a second post-conviction motion, claiming judicial vindictiveness with respect to the imposition of his sentences. On April 20, 2005, the second post-conviction motion was dismissed as successive. Petitioner appealed and the Second District affirmed on September 16, 2005. At that point, Petitioner had a petition for writ of habeas corpus pending, which he had filed on August 16, 2005. Petitioner argued his appellate counsel on direct appeal was ineffective because he did not raise the vindictiveness claim. On March 1, 2006, the District Court denied the habeas petition. Thereafter, on January 8, 2007, Petitioner filed the instant habeas petition, which he amended and re-filed on April 5, 2007.

---

[1] At that point, Petitioner had a federal habeas motion pending, which he filed on January 10, 2005. The Court concluded that the petition did not comply with "Rule 2(c) of the Rules Governing § 2254 cases because only part of the document was written on the court required form." Therefore, the Court dismissed the petition without prejudice on January 18, 2005.

## DISCUSSION

Petitioner raises the following grounds in his Amended Motion to Vacate, Set Aside, or Correct Sentence:

**Ground One:**   The Second District erred in denying Petitioner's motion for judgment of acquittal because the evidence was insufficient to establish he was guilty beyond a reasonable doubt and thus his right to due process was infringed.

**Ground Two:**   The circuit court and Second District failed to apply clearly established United States Supreme Court precedent when they failed to find the sentences Petitioner received were vindictive.

**Ground Three:**   Petitioner's appellate counsel was ineffective for failing to raise the judicial vindictiveness claim on direct appeal.

The Court denies Petitioner's motion on all three grounds. First, the Court concludes that Petitioner's judgment of acquittal claim is not cognizable. However, even if it were cognizable, the claim is time barred. Second, Petitioner is procedurally barred from asserting his vindictiveness claim and ineffective assistance claim. Further, even if Petitioner were not procedurally barred, the Court concludes that these claims would fail on the merits.

## I. TRIAL-BASED JUDGMENT

## A. COGNIZABLE AND EXHAUSTION

The underlying facts surrounding the trial-based judgment are that in December, 2001, Petitioner approached a young girl, learned she was on her way to school, and asked if she wanted a ride. She declined and Petitioner contends he did not follow her or ask her anything else that morning. Petitioner further states that in January, 2002, he saw the young girl again and began to "flirt" with her. According to Petitioner, in February, 2002, he motioned for

her to come to him but she did not. Petitioner emphasizes that no evidence indicated he should have known the girl was under 16 years old or that he made derogatory comments to her. He asserts that no evidence was introduced to support the "malicious" element of the offense.[2] However, petitioner's claim, which is based on the state court's denial of his motion for judgment of acquittal, is not cognizable in a federal habeas proceeding.

The quantum of evidence required to withstand a motion for judgment of acquittal in Florida state courts is a matter of Florida law. It is well-settled that a violation of state law alone is not a basis for federal habeas relief. See Davis v. Jones, 506 F.3d 1325, 1332 (11th Cir. 2007) (quoting Carrizales v. Wainwright, 699 F.2d 1053, 1055 (11th Cir. 1983) ("A state's interpretation of its own laws or rules provides no basis for federal habeas corpus relief, since no question of a constitutional nature is involved."). However, in addition to alleging a violation of state law, Petitioner also asserts that his right to due process under the 14th Amendment of the United States Constitution was infringed. Relying on Jackson v. Virginia, 443 U.S. 307 (1979), Petitioner contends that the State's evidence was insufficient to establish he was guilty beyond a reasonable doubt, implicating his right to due process.

At the outset, although the constitutional dimension of Petitioner's claim may appear to be cognizable, under the exhaustion doctrine Petitioner must have presented the constitutional aspect of his argument to the state courts. See Henderson v. Campell, 353 F.3d 880, 891 ("A state prisoner seeking federal habeas relief cannot raise a federal constitutional

---

[2] Florida Statute § 784.048(5) provides in pertinent part that "[a]ny person who willfully, maliciously, and repeatedly follows, harasses, or cyberstalks a minor under 16 years old of age commits the offense of aggravated stalking . . ."

claim in federal court unless he first properly raised the issue in state courts."); O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999) ("[P]risoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's establish appellate review process."). Petitioner has not provided the state courts an opportunity because he did not rely on Jackson in state court, but rather only advanced state law arguments, which are not cognizable in a federal court. However, Petitioner maintains that he "fairly presented" the constitutional dimension of his arguments in state court. See Castille v. Peoples, 489 U.S. 346, 350-51 (1989) ("[A] claim can be exhausted even when there exists a possibility of further state court review, so long as the claim has been 'fairly presented' to the state courts."). The support for Petitioner's position is inadequate.

When challenging the ruling on the motion for judgment of acquittal, Petitioner did not advance a constitutional argument. Moreover, on direct appeal,[3] Petitioner did not even refer to the United States Constitution. To raise the constitutional issue, Petitioner merely needed to "indicate the federal law basis for his claim in a state-court petition or brief." Baldwin v. Reese, 541 U.S. 27, 32 (2004); see id. (holding that "ordinarily a state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or brief" to find the presence of a federal claim); McNair v. Campell, 416 F.3d 1291, 1302 (11th Cir. 2005) ("[T]he exhaustion doctrine requires a habeas applicant to do more than scatter some makeshift needles in the haystack of the state court record.") (citation omitted).

---

[3]Florida Rule of Criminal Procedure 3.380(b) requires that a motion for judgment of acquittal "fully set forth the grounds on which it is based."

Case 8:07-cv-00048-JSM-EAJ   Document 27   Filed 12/01/08   Page 6 of 19 PageID 227

Consequently, Petitioner failed to "fairly present" the instant judgment of acquittal claim to the state courts, divesting the state system of an opportunity to review any purported constitutional issues. See, e.g., Duncan v. Henry, 513 U.S. 364, 366 (1995) ("Respondent did not apprise the state court of his claim that the evidentiary ruling of which he complained was not only a violation of state law, but denied him [due process] . . . mere similarity of claims is insufficient to exhaust."). Therefore, the Court concludes that Petitioner did not present a due process claim under the United States Constitution in state court.

Ordinarily, a denial of a motion for judgment of acquittal on the grounds of insufficient evidence is not cognizable even if a petitioner places a due process label on the claim. See Langford v. Day, 110 F.3d 1380, 1389 (9th Cir. 1996) (explaining that a petitioner cannot "transform a state-law issue into a federal one merely by asserting a violation of due process."); Willeford v. Estelle, 538 F.2d 1194, 1198 (5th Cir. 1976) ("Although couched in terms of equal protection and due process . . . [t]his issue is not of federal constitutional proportions."). However, even if Petitioner's claim were cognizable, it is time barred.

### B. TIME BAR

Petitioner is time barred under 28 U.S.C. §2244(d), which provides a one year limitation period running from the "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. §2244(d)(1)(a). The limitation period tolls while "a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. §2244(d)(2). After considering the date on which the limitation period

Page 6 of 19

was triggered, the time during which the limitation period tolled, and the date on which the limitation period expired, it is clear that Petitioner is time-barred from asserting his judgment of acquittal claim.

Petitioner's limitation period was triggered on March 8, 2004, 30 days after the Second District affirmed Petitioner's trial-based judgment, when the time for seeking review expired.[4] 28 U.S.C. §2244(d)(1)(a). Twenty two days later, the time limitation began to toll from March 30, 2004, when Petitioner filed his first collateral motion, until March 1, 2006, when the Second District denied his final collateral motion in state court. 28 U.S.C. §2244(d)(2). Thereafter, 313 days later on January 8, 2007, Petitioner filed his habeas petition in federal court on the sole ground of judicial vindictiveness. At this point, because only 335 days had expired, Petitioner's initial petition was timely. However, 86 days later on April 5, 2007, Petitioner filed an amended Petition, adding the ineffective assistance claim and the judgment of acquittal claim. Although the one year limitation period had expired by this time, in Mayle v. Felix, 545 U.S. 644 (2005), the United States Supreme Court reaffirmed that as long as an additional claim "relates back" to an original claim, a petitioner is not time-barred from asserting the additional claim.

However, in Mayle, the Court restricted the scope in which claims can relate back, explaining that an added claim does not relate back to an original claim based on a mere connection between the "trial, conviction, or sentence." Id. at 657. Rather, related claims

---

[4] Florida Rule of Appellate Procedure 9.110 provides that an appellate court's jurisdiction must be invoked "within 30 days of rendition of the order to be reviewed."

refer to the same "conduct, transaction, or occurrence" and must be tied to a "common core of operative fact," not "by facts that differ in both time and type from those the original pleading set forth." Id. at 650.  Under this standard, Petitioner asserts that the judge's vindictive sentence–his original claim–and the state courts' denial of his motion for judgment of acquittal–his additional claim–both stem from one "occurrence" constituting the common "core of operative fact"–namely, Petitioner's refusal to accept the plea offer.  In other words, Petitioner postulates that his refusal to accept the plea offer infected the judge with a bias that both motivated the judge to deny Petitioner's motion for judgment of acquittal and to vindictively impose Petitioner's sentence.

However, Petitioner's argument fails because it misapplies the term "occurrence," and because Petitioner's judgment of acquittal claim arises from "facts that differ in both time and type from" the vindictiveness claim.  Id. at 657; see id. at 661 ("Each separate congeries of facts supporting the grounds for relief, the Rule suggests, would delineate an 'occurrence.'").  Although Petitioner's theory is that the denial of his motion for judgment of acquittal was motivated by the same "occurrence" in terms an event that led the judge to vindictively impose Petitioner's sentence–the plea offer–that does not mean that both claims *arose* from the same "occurrence" or "core of operative fact." Id.  Indeed, unlike the factual basis for Petitioner's vindictiveness claim, which arises from a disparity between a *pre-trial* offer and a *post-trial* sentence, a motion for judgment acquittal arises from the sufficiency of evidence presented *during trial*. See id. at 657 (rejecting the petitioner's "translation of 'conduct, transaction, or occurrence,' to mean same 'trial, conviction, or sentence.'").

Page 8 of 19

Accordingly, the Court concludes Petitioner's judgment of acquittal claim does not relate back to his vindictiveness claim. As such, Petitioner is time barred from asserting his judgment of acquittal claim.[5]

## I. JUDICIAL VINDICTIVENESS AND INEFFECTIVE ASSISTANCE

### A. PROCEDURAL BAR

If a claim is procedurally defaulted in state court, then a petitioner is procedurally barred from asserting the claim in federal court unless the petitioner can satisfy the procedural default rule. See Alderman v. Zant, 22 F.3d 1541, 1549 (11th Cir. 1994) ("Pursuant to the doctrine of procedural default, a state prisoner seeking federal habeas corpus relief, who fails to raise his federal constitutional claim in state court, *or who attempts to raise it in a manner not permitted by state procedural rules* is barred from pursuing the same claim in federal court absent a showing of cause for and actual prejudice from the default.") (emphasis added). Because Petitioner procedurally defaulted his claims in state court, and because he fails to satisfy the procedural default rule, he is barred from asserting his claims.

---

[5] Petitioner argues Mayle does not control because the date on which the petitioner in that case requested leave to amend his petition was outside the one year limitation, requiring a relation back analysis, whereas the date on which Petitioner requested leave to amend was within the one year limitation, obviating the need for a relation back analysis. It is doubtful that Mayle stands for this proposition and Petitioner points to no citation or additional legal support for this interpretation. Regardless, Petitioner requested leave to amend after the one year limitation period expired. Indeed, because 335 days expired when Petitioner filed his original petition on January 8, 2007, the one year limitation expired 30 days later, on February 7. Therefore, because Petitioner requested leave to amend on February 20 (Dkt. #7), the one year limitation period had already expired.

As to Petitioner's procedural default of his vindictiveness claim in state court, Petitioner first raised the claim in his *second* post-conviction motion, where the circuit court reasoned

> Defendant cannot explain why he did not raise this new and different claim regarding vindictive sentencing in his earlier motion; the facts supporting the ground were either known and could have been known to him at the time of the earlier motion. The failure to raise this issue in his prior motion is an abuse of process.

(Rcd. #18). The court dismissed the motion as successive and the Second District affirmed. Indeed, Petitioner should have raised his vindictiveness claim during sentencing, direct appeal, or in his first post-conviction motion. Thus, because Petitioner procedurally defaulted his vindictiveness claim in state court, the procedural default rule requires him to establish "cause for and actual prejudice from the default." Alderman, 22 F.3d at 1549.

As to the procedural default rule's cause prong, Petitioner strives to demonstrate his appellate counsel failed to raise the vindictiveness claim (Dkt. #24 at 4). The Court recognizes that the ineffective assistance of counsel can constitute cause for a procedural default. Murray v. Carrier, 477 U.S. 478, 488 (1986). However, the Court also recognizes that "an ineffective-assistance-of-counsel claim asserted as cause for the procedural default of another claim can itself be procedurally defaulted." Edwards v. Carpenter, 529 U.S. 446, 453 (2000); see also Rutherford v. Moore, 774 So. 2d 637, 644 (Fla. 2000) ("Habeas petitions are the proper vehicle to advance claims of ineffective assistance of appellate counsel. However, claims of ineffective assistance of appellate counsel may not be used to camouflage issues that should have been raised on direct appeal or in a postconviction

Page 10 of 19

motion.") (citations omitted).  In adjudicating Petitioner's second post-conviction motion, the circuit court concluded Petitioner "cannot explain" why he did not raise the vindictiveness claim in his first post-conviction motion (Rcd. #18).[6] Therefore, not only did Petitioner procedurally default his vindictiveness claim, he also defaulted his ineffective assistance claim.  Because Petitioner defaulted his ineffective assistance claim, he cannot fault his counsel as the cause of his procedural default with respect to his vindictiveness claim.  Edwards, 529 U.S. at 453.

Without an alternative basis to satisfy the cause prong, Petitioner has not satisfied the procedural default rule.   See, e.g., Engle v. Isaac, 456 U.S. 107, 134 n. 43 ("Since we conclude that these respondents lacked cause for their default, we do not consider whether the also suffered actual prejudice."). The Court concludes Petitioner is procedurally barred from asserting his vindictiveness claim and ineffective assistance claim.  However, even if these claims were not procedurally barred, they would fail on the merits.

## B. MERITS

### 1. JUDICIAL VINDICTIVENESS

Under 28 U.S.C. § 2254(d), Petitioner must establish that the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." See also Bottoson v. Moore, 234 F.3d 526, 531 (11th Cir. 2003) ("A state court decision is contrary to the Supreme Court's

---

[6]Notably, in Petitioner's first post-conviction motion, the court rejected six grounds on which Petitioner based an ineffective assistance of *trial* counsel claim, none of which asserted ineffective assistance of *appellate* counsel  (Rcd. #7).

clearly established precedent (1) if the state court applies a rule that contradicts the governing law as set forth in Supreme Court case law, or (2) if the state court confronts a set of facts that are materially indistinguishable from those in a decision of the Supreme Court and nevertheless arrives at a different result than the Supreme Court precedent.") (emphasis added); id. ("an unreasonable application may occur if a state court unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to the context of a case."). Petitioner argues that the state courts ignored the Supreme Court's decision in North Carolina v. Pearce, 395 U.S. 711 (1969), which set forth the presumption of judicial vindictiveness. 395 U.S. at 723-24.

In Pearce, the defendant was convicted after a trial and sentenced to a term of imprisonment. Id. at 713-14. In the companion case, the defendant pled guilty to several charges. Id. Both judgments were reversed. Id. Subsequently, both defendants were retried, convicted, and sentenced to longer terms that originally imposed. Id. The issue was "what constitutional limitations there may be upon the general power of a judge to impose upon re-conviction a longer prison sentence that the defendant originally received." Id. at 717. In creating the presumption of judicial vindictiveness, the Court held that "whenever a judge imposes a more severe sentence upon a defendant after a new trial, the reasons for his doing so must affirmatively appear." Id. at 726.

Twenty years later, in Alabama v. Smith, 490 U.S. 794 (1989), the Supreme Court qualified Pearce, limiting its application to circumstances "in which there is a 'reasonable likelihood' of vindictiveness," not merely where a defendant receives a higher sentence.

Smith, 490 U.S. at 799 (citation omitted). Following Pearce and its progeny, in Wilson v. State, 845 So. 2d 142 (Fla. 2003), the Florida Supreme Court applied a "totality of the circumstances" test, setting forth specific factors to determine whether a "reasonable likelihood" of judicial vindictiveness is present:

> (1) whether the trial judge initiated the plea discussions with the defendant in violation of Warner; (2) whether the judge through comments on the record, appears to have departed from his or her role as an impartial arbiter by either urging the defendant to accept a plea, or by implying or stating that the sentence imposed would hinge on future procedural choices, such as exercising the right to trial; (3) the disparity between plea offer and the ultimate sentence imposed; and (4) the lack of any facts on the record that explain the reason for the increased sentence other than that the defendant exercised his or her right to a trial or hearing.

Wilson, 845 So. 2d at 156. The Government argues that Pearce does not control because that decision involved re-sentencing whereas Petitioner was not re-sentenced. Petitioner asserts that the Supreme Court did not limit its holding to the context of re-sentencing. Further, Petitioner argues that the reasoning essential to the decision is premised upon not punishing a defendant for the exercise of his constitutional rights. However, even if the presumption of judicial vindictiveness can arise outside the context of re-sentencing,[7] under 28 U.S.C. § 2254(d)(1), Petitioner has not established that the state court decisions were "contrary to, or involved an unreasonable application of" Pearce and its progeny.

---

[7]In Wilson, both defendants had not been re-sentenced. 845 So. 2d at 145-148. Another distinction is based on judicial participation in the plea negotiations. See id. at 152 ("[I]mposition of a harsher sentence, without explanation on the record after judicial participation in the plea negotiations, does raise concerns that were not present in the United States Supreme Court opinion in Smith. As previously explained, in Smith there was no judicial participation in the plea negotiations . . . ").

Petitioner asserts that several of the Wilson factors apply, raising a "reasonable likelihood" of vindictiveness. Under the first factor,[8] Petitioner asserts that the court initiated plea discussions, which were prompted by the victim's parents' concerns about the victim having to endure testifying at trial. Petitioner therefore argues that this violates State v. Warner, 762 So. 2d 507 (Fla. 2000), where the court stated that "[t]he trial court must not initiate a plea dialogue." 756 So. 2d at 513. Importantly, however, Petitioner presents no evidence to support that the trial judge initiated the plea dialogue. See Pearce, 395 U.S. at 725 n. 20 ("[E]xistence of a retaliatory motivation would . . . be extremely difficult to prove."). Therefore, Petitioner has not established that the first factor weighs in his favor.[9]

As to the other factors, they also do not weigh in favor of a presumption of vindictiveness. Under the second factor, Petitioner merely asserts that there is a reasonable likelihood that the trial judge imposed a harsher punishment in retaliation for Petitioner's decision to exercise his right to trial. Again, Petitioner does not refer to any "comments on the record" supporting his assertion (Dkt. #15 at 16). Under the third factor, Petitioner emphasizes the disparity between the plea offer and his sentence. Petitioner relies on the trial

---

[8]While the violation of Warner is a factor that Florida state courts consider in determining whether a presumption of vindictiveness has arisen, to the extent that the Court considers this factor, it is only considered as one of many circumstances under Smith. Smith, 490 U.S. at 799. Indeed, the Court's task is not to determine whether the state court misapplied state law, but determine whether the state court misapplied "clearly established Federal law." See 28 U.S.C. § 2254(d)(1).

[9]The Court also acknowledges Petitioner's argument that Warner was violated because, during the plea dialogue, the circuit court offered him a plea offer of 48 months for both the stalking charge and revocation of probation, but the discussions were not made a part of the record. See 762 So.2d at 514 ("[a] record must be made of all plea discussions involving the court"). Again, the Petitioner provides no evidence to support his assertion that the judge made an offer of 48 months.

judge's statement at the sentencing hearing, where the judge stated that the offer was "significantly less" then the ultimate sentence (Dkt. #15 at 13, Ex. A-3). Additionally, under the fourth factor, Petitioner asserts that there are "no new facts on the record post-trial to justify such a three and one-half fold increase in the sentence," and "if the judge thought [Petitioner] such a despicable person how could he justify extending a [significantly less] pre-trial offer to him" (Dkt. #15 at 16). Evidently, the judge explained his justification at the sentencing hearing:

> THE COURT: Anything Mr. Benito or anything Mr. Days wants to indicate, understanding that he still has appellate rights both as to the violation of probation and to this charge?
>
> MR. BENITO: No, sir. Judge, I think we – when we discussed this, the Court is aware that this had equities on both sides as far as this particular. I would ask the Court to consider a bottom of the guidelines sentence.
>     Mr. Days testified in front of you that he was not stalking this girl. Obviously the jury felt otherwise and you felt otherwise. We would ask you to consider a bottom of the guidelines sentence, Judge. We did not go to trial to waste the Court's time. We genuinely felt that he was not doing anything wrong in what he was doing with this girl.
>
> THE COURT: The sentence that he receives is not reflective of going to trial. I understand the issues involved regarding that, although frankly, I gave you an opportunity or gave him an opportunity for something significantly less because, at your request and the victim's father's request, we wanted to try to spare her from having to come in and testify. And so I made what I thought was a rather generous offer to keep her from having to go through the testimony.
>     The sentence that he receives is reflective of his body of work in the criminal past which, as we've detailed, is fairly substantial. And I think this would be his 13th felony. This involves the 14 year old girl. I do think it was a crime of opportunity, but it appears Mr. Days' history is that of crimes of opportunity related to drugs, related to drivers licenses, and all matter of things.

> So you get 13 felonies, the issue is what's appropriate as far as folks in the community for people that continue over and over again that commit felonies. And as the Criminal Punishment Code says, the primary purpose is to punish offenders.

(Dkt. #15 at Ex. A-3). The trial judge justified the extended sentence based on the Petitioner's "body of work." See Smith, 490 U.S. at 801 ("Even when the same judge imposes both sentences, the relevant sentencing information available to the judge after the plea will usually be considerably less than that available after a trial."). Petitioner merely responds that "saying so does not make it true" (Dkt. #15 at 16). Apparently, the substance of Petitioner's claim is solely founded upon the disparity in the plea offer and sentence.

In light of the trial judge's explanation for the disparity, the circumstances do not warrant the conclusion that there is a "reasonable likelihood" of judicial vindictiveness. See Wilson, 845 So. 2d at 152 (holding that "a presumption of judicial vindictiveness [does not] arise in all cases where a higher sentence is imposed after the judge has participated in the plea discussions."). Therefore, because the circumstances do not raise a presumption of vindictiveness, the burden remained on the petitioner to demonstrate that the judge was vindictive. See Smith, 490 U.S. at 799-800 ("Where there is no such reasonable likelihood, the burden remains upon the defendant to prove actual vindictiveness."). Accordingly, because Petitioner has not established that the state courts departed from the "Supreme Court's clearly established precedent" in Pearce and its progeny, the Court would deny Petitioner's claim of judicial vindictiveness if it were not procedurally barred.

## 2. INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL

The Sixth Amendment to the United States Constitution provides the right of the accused to have effective assistance of counsel for his defense. McMann v. Richardson, 397 U.S. 759, 771 n.14 (1970). It is well-established that to prevail on an ineffective assistance claim, the accused must first show that his "counsel's performance was deficient" and then must show that the deficient performance prejudiced the outcome of his case. Strickland v.Washington, 466 U.S. 668, 687 (1984). Petitioner has failed to establish that his appellate counsel's performance was deficient; additionally, the Court concludes that even if counsel's performance were deficient, the Petitioner has failed to establish that he suffered sufficient prejudice.

Under the deficient performance prong, Petitioner argues that his appellate counsel failed to present his vindictiveness claim on direct appeal. Petitioner does not set forth a sufficient basis to establish that competent appellate counsel would have raised the vindictiveness claim. See Chandler v. U.S., 218 F. 3d 1305, 1315 (11th Cir. 2000) ("The reasonableness of a counsel's performance is an objective inquiry. . . . [and] a petitioner must establish that no competent counsel would have taken the action that his counsel did take.") (footnotes omitted). Indeed, Petitioner does not assert that trial counsel preserved the vindictiveness claim for review, and the decision not to raise an issue that was not preserved falls within the wide range of reasonable appellate strategy. See Rutherford v. Moore, 774 So. 2d 637, 643 (Fla. 2000) ("We have 'repeatedly held that appellate counsel cannot be considered ineffective for failing to raise issues which [were] procedurally barred . . . because

Page 17 of  19

they were not properly raised at trial.'") (citation omitted).

Additionally, appellate counsel is not deficient when omitting a non-meritorious claim on appeal. Id. Therefore, even if Petitioner's trial counsel had preserved the vindictiveness issue, because his vindictiveness claim lacks merit, his appellate counsel's decision to omit the claim would actually be sound strategy. See Jones v. Barnes, 463 U.S. 745, 751-52 (1983) ("[E]xperienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues."); Bolender v. Singletary, 16 F.3d 1547, 1573 (11th Cir. 1994) (noting that "raising every single frivolous point on appeal is not a sign of effective counsel and 'often has the effect of diluting the import of stronger points.'") (citation omitted). Again, Petitioner merely pointed to the disparity between the plea offer and sentence without references to any other details from the record indicating his sentence was vindictively imposed. As such, Petitioner's appellate counsel did not render deficient performance in omitting the vindictiveness claim on direct appeal.

Finally, under the prejudice prong, Petitioner's argument is even less persuasive. Petitioner merely asserts that because the claim was omitted, he was denied his right to challenge the clearly vindictive sentence. Again, Petitioner has not demonstrated that his sentence was vindictively imposed. Because Petitioner does not show that he would have prevailed in his direct appeal, he has not demonstrated prejudice from his appellate counsel's omission. See U.S. v. Cronic, 466 U.S. 648, 658 (1984) (noting that because a lawyer is presumed to be competent, "the burden rests on the accused to demonstrate a constitutional

violation"); <u>Chandler v. U.S.</u>, 218 F. 3d 1305, 1313-14 (11th Cir. 2000) ("[T]he burden of persuasion is on a petitioner to prove, by a preponderance of competent evidence, that counsel's performance was unreasonable"). Therefore, the Court denies the Petitioner's motion on the basis of ineffective assistance of counsel.

## CONCLUSION

It is therefore ORDERED AND ADJUDGED that:

1. Petitioner's Amended Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 (Dkt. #14) is DISMISSED.

2. The Clerk shall terminate any pending motions and close this case.

**DONE** and **ORDERED** in Tampa, Florida on December 1, 2008.

_____
JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

**Copies furnished to:**
Counsel/Parties of Record

F:\Docs\2007\07-cv-48.deny 2254.wpd